Julius C. Morse v. Commissioner.
Morse v. Commissioner
Docket Nos. 27036, 27037.
United States Tax Court
1951 Tax Ct. Memo LEXIS 170; 10 T.C.M. (CCH) 636; T.C.M. (RIA) 51210; June 29, 1951
*170 Thomas Kaplan, Esq., for the petitioner. James McGowan, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined deficiencies in the petitioner's gift taxes for the years 1945 and 1946 in the respective amounts of $2,925 and $3,918.75. The question presented is whether the Commissioner erred in valuing at $355 per share certain stock which was the subject of various gifts from the petitioner to members of his family during 1945 and 1946. The petitioner filed his gift tax returns with the collector for the district of Massachusetts. Findings of Fact The facts which have been stipulated are found as facts. In 1945 and 1946 the petitioner transferred as gifts certain shares of the common stock of the Leopold Morse Company in the following manner: October 25, 1945 - 100 shares to Jeska S. Morse, the petitioner's wife. November 17, 1945 - 100 shares to David Morse, the petitioner's son. December 31, 1946 - 25 shares each to Richard F. Morse, the petitioner's son, Marjorie M. Morse, Richard's wife, Alice Morse, and Richard F. Morse, Jr., their children. The petitioner has been connected with *171 the Leopold Morse Co. during the entirety of his business career. Since 1906 he has served as a director of the Company and since 1935 as president. At the time of the gifts, the petitioner was about 70 years of age. The Leopold Morse Co., hereinafter referred to as the Company, is a Massachusetts corporation engaged in the business of manufacturing, wholesaling, and retailing men's and boys' clothing. Originally, the Leopold Morse Company was a sole proprietorship, established in 1852. Subsequently, it was changed to a partnership, comprised of Leopold Morse, Jacob Morse, Ferdinand Strauss, and Louis Strauss. In 1906 the present company was incorporated. The directors and officers of the Company are Julius C. Morse, Richard F. Morse, and Jacob Strauss, descendants of the original Morse and Strauss partners. Operations of the Company are about equally divided between the manufacturing, wholesaling, and retailing functions. A portion of the clothing manufactured is sold at wholesale prices to retailers located throughout the country, while park is sold directly to the public through two retail outlets operated by the Company in Boston. In addition, the Company owns four subsidiary *172 corporations which operate retail stores in nearby New England. These include Browning King, Inc., Boston, Massachusetts; Nichols & Morse Co., Haverill, Massachusetts; University Shop, Inc., Hartford, Connecticut; and University Shop, Inc., Cambridge, Massachusetts. With the exception of the Cambridge concern, these subsidiaries are wholly owned by the Company. It controls a 97 per cent interest in the Cambridge shop. Approximately one-third of the total requirements of the subsidiaries is purchased from the parent company on regular terms, with cash settlement due within 30 days. The Company was authorized to issue at a par value of $100 per share three classes of capital stock - first preferred, 6 per cent cumulative (4,000 shares); second preferred, 6 per cent noncumulative (1,250 shares); and common (3,250 shares). The common stock carries the voting rights subject however, to forfeiture as subsequently explained herein. Until all dividend obligations on the preferred stock have been met no dividends are declarable on the common stock. At the time of the gifts, there were 3,950 shares of first preferred and 2,225 shares of common stock outstanding. All of the 980 shares of second *173 preferred stock which had been issued has been held by the Company as treasury stock since 1944. Bonds were not included as a means of financing nor were there any bank loans outstanding in 1945 and 1946. During 1945 and 1946, virtually all of the outstanding stock was owned by the families of the petitioner, Jacob Strauss, and Leon Strauss (as trustee for Irene Strauss), each family controlling about one-third of the total shares then outstanding. Prior to the gifts the petitioner and his immediate family held their stock as follows: Julius C. Morse
732 1/2 shares of common stock
850 shares of first preferred stock
Jeska S. Morse
50 shares of first preferred stock
Richard F. Morse
100 shares of common stock
250 shares of first preferred stock Apart from the intrafamily gift transfers, none of the foregoing persons increased their Company stockholdings during the taxable years. The 100-share gifts each represented 4.5 per cent of the total shares of common stock then outstanding, while each of the 25-share gifts constituted 1.1 per cent of the total. The donated stock was not freely marketable since it was given subject to an existing encumbrance. *174 The stock transferred formed part of the petitioner's holdings which had been pledged to secure a debt owed by him to the Company. On October 20, 1945, the indebtedness amounted to $31,162.50, and it was secured by 732 1/2 shares of the Company's common stock, 100 shares of preferred stock, and a second lien on 750 shares of preferred stock which had been pledged by the petitioner as prior security for debts totaling $45,695. On November 17, 1945, the petitioner's debt to the Company was reduced to $30,500, but the security arrangement continued as before. The petitioner's debts secured by the 750 shares of preferred stock were reduced to $45,595. On December 31, 1946, the petitioner owed the Company $29,500 and the other aforementioned creditors $29,800. Pledged as security on December 31, 1946, for the debt to the Company were 732 1/2 shares of common stock, 400 shares of preferred stock, and 450 shares of preferred stock on which there was a prior lien. The only sources of income available to the petitioner for the payment of these debts were his compensation as president of the Company and the dividends paid on his stock. In 1945 and 1946 the petitioner received compensation *175 in the respective amounts of $35,408.33 and $34,999.96 and preferred dividends in the respective amounts of $10,200 and $10,625. In 1942, the petitioner entered into the following written agreement with the Company: "I Julius C. Morse * * * agree with the Leopold Morse Company * * * that from time to time, in case I shall receive from said corporation any increase in salary or a bonus or dividend, I shall pay such increase * * * to said corporation in reduction of the principal of said note, as shall be mutually agreed upon; and if an agreement is not made, such amounts as shall be determined by the majority of Lee M. Friedman, Herbert B. Ehrman, and Jacob H. Strauss." Like many other clothing concerns, the Company encountered financial difficulties during the early years of the recent depression. After recovering from the initial regression, the Company began to slowly improve its financial condition, only to be retarded again by the economic recession of 1938 and 1939. Dividends on the preferred stock were not paid regularly, and by April 30, 1935 (the end of the Company's fiscal year), arrearage in the amount of $120,000 had accumulated on the first preferred stock. This arrearage *176 continued thereafter at various amounts. The accumulated preferred dividends and the balance of earned surplus for the fiscal years ended April 30, 1938, to April 30, 1947, inclusive, were as follows: Fiscal Year
Ending
Accumulated
Earned
April 30
Dividends
Surplus
1938
$108,000
$211,491.97
1939
132,000
126,410.16
1940
156,000
157,330.61
1941
180,000
212,143.03
1942
201,450
306,155.00
1943
225,150
385,190.71
1944
227,125
444,277.83
1945
227,125
529,544.10
1946
203,425
703,049.92
1947
177,750
928,091.49
Since 1934, at least, no dividends have been declared on the common stock of the Company. Furthermore, in 1937 the common stock holders forfeited their voting rights to the holders of the first preferred stock in accordance with the following amendment to the Articles of Organization: "The holders of first preferred stock shall not be entitled to vote at any meeting of the corporation unless default is made in the payment of any dividend on any first preferred stock * * * and such default has continued for six months, after which the holders of the first preferred stock shall be entitled to the exclusive voting power until all *177 defaults in payment of dividends on first preferred stock * * * have been made good. The first preferred stock shall not entitle the holders thereof to participate in any future increase in capital or in any future issue of stock already authorized. No first preferred stock shall be issued except for cash and at not less than par and accrued dividend." The sales and inventories of the Company, including subsidiaries, from April 30, 1938, to April 30, 1947, were as follows: Fiscal Year
Ending
April 30
Sales
Inventories
1938
$3,103,529.34
$ 755,964.08
1939
2,679,449.63
792,926.90
1940
2,804,443.94
886,634.40
1941
3,079,529.05
986,321.58 l1942
3,976,732.87
1,135,922.97
1943
3,651,889.33
888,871.37
1944
3,745,566.31
702,502.50
1945
3,979,264.56
792,713.35
1946
4,296,760.36
676,667.94
1947
5,337,511.77
1,173,870.24
Conditions in the garment industry were abnormal in 1945 and 1946 as a result of the huge demand for men's clothing generated by the return of millions of men from the armed services to civilian life. The net working capital of the Company on April 30, 1946, and April 30, 1947, was $1,285,113.86 and $1,510,906.47, respectively. *178 The net income of the Company and its subsidiaries, after allowance for taxes and minority interests and the net income per share of common stock after allowance for the yearly preferred dividends for the fiscal years ended April 30, 1938 to April 30, 1947, inclusive, were as follows: Fiscal Year
Net Income per
Ending
Share of Com-
April 30
Net Income
mon Stock
1938
[96,011.12) *
[54.50)
1939
(85,081.81)
(49.50)
1940
32,504.45
2.09
1941
54,812.42
13.50
1942
134,011.97
41.00
1943
79,035.71
25.00
1944
76,544.72
24.10
1945
108,966.27
38.40
1946
220,905.82
89.00
1947
274,416.57
112.00
The net worth of the Company on April 30, 1945, was $1,206,844.10, on April 30, 1946, it was $1,380,349.92, and on April 30, 1947, it was $1,605,391.49. These figures include good will valued in each year at $1. In general the Company followed a conservative policy in valuing its assets. In 1931 in connection with the administration of the estate of Samuel Strauss, 25 shares of common stock of the Company were valued at $100 per share by three appraisers appointed by the Probate Court of Suffolk County, Massachusetts. *179 In 1941 the Company purchased from the estate of Samuel Strauss 50 shares of first preferred stock and 25 shares of common stock for $1,000. The executors of the estate were also at that time officers of the Company. The stock of the Company was not listed on any stock exchanges, nor was it traded in over the counter. With the exception of the sale by the estate of Samuel Strauss, there is no record of any sales involving the Company stock. Neither is there a record of any Company stock being offered for sale, so that there are no bid and asked prices available. Ultimate Finding of Fact: On the basic dates the fair market value of the transferred shares of the common stock of the Company was $155 per share. Opinion The sole issue in this proceeding is the determination of the fair market value as of October 20, 1945, November 17, 1945, and December 31, 1946, of the shares of Leopold Morse Company common stock which were the subject of gifts by the petitioner on these dates. The petitioner contends that the donated shares of stock had a fair market value of not more than $25 per share on the basic dates while the respondent contends that the value per share of the gift stock *180 on the dates of the gifts was at $355least per share. Upon consideration of all of the evidence, it is concluded that the fair market value of the gift stock was $155 per share on October 20, 1945, November 17, 1945, and December 31, 1946, which has been found as a fact. Among the factors which we deem to be important in determining the fair market value of the stock on the dates of the gifts are the following: Net worth, earnings, dividend-paying capacity, the corporation's record of dividend payments, the position of the corporation in the industry of which it is a part, indebtedness of the corporation, good will, tangible assets, and net working capital. It is important to consider, also, the marketability of the stock of the corporation, and in connection with this, the fact that the stock is unlisted stock, that the stock of the corporation is closely held, that the stock is not traded in over the counter, that there have been few sales of the stock, and that there is no evidence of any sales close to the dates of the gifts. Other factors to be considered are that the stock which was given to each donee constitutes a minority interest; that the stock was common stock without *181 voting rights on the dates of the gifts; that there was outstanding 6 per cent cumulative preferred stock which had voting rights at the time the gifts of the common stock were made; and that there was a large arrearage in the payment of dividends on the cumulative preferred stock in 1945 and 1946. The foregoing constitute some of the usual and general factors which are considered in determining the fair market value of stock. All of the above factors have been considered along with all other relevant factors. In this proceeding, there is an uncommon factor that all of the common stock which the petitioner gave to members of his family in 1945 and 1946 was pledged, along with other stock of the Leopold Morse Company belonging to the petitioner, with the Leopold Morse Company to secure indebtedness of the petitioner to the Company, and as collateral security for the petitioner's notes. In 1945, the unpaid balance of the debt was about $31,000. It must be recognized that although the gift stock was thus encumbered, the creditor of the petitioner, which held stock, including the gift stock, to secure the loan was not an "outsider" such as a bank or any other commercial creditor which *182 would be obliged to follow more strictly the usual rules relating to declaring defaults, and levying upon collateral. This factor, under the circumstances, is not entitled to receive as much weight as would be given if the donor's creditor were not the Leopold Morse Company, of which the donor is the president, director, and one of the chief stockholders. The stock involved in each one of the gifts is not a substantial part of all of the stock of the petitioner which is pledged. The petitioner has introduced in evidence the testimony of an expert witness who has given his opinion of the fair market value per share of the gift stock on the critical dates. His opinion of the fair market value is far too low. In our opinion he failed to attribute the proper weight to important factors which would be reflected in the determination of a willing buyer and a willing seller. The respondent did not introduce the testimony of an expert witness. He has relied largely on Dun and Bradstreet reports on the financial condition of the Leopold Morse Company. In our opinion he has overvalued the stock by placing too great an emphasis on net worth, earnings, and dividend-paying capacity, without *183 giving enough weight to the fact that there is outstanding, over and above the common stock, the preference of the 6 per cent cumulative preferred stock on which there were substantial accumulated dividends in 1945 and 1946. We are unable to sustain the respondent's determination. Although the evidence does not support the petitioner's contention, we are satisfied that the fair market value of the stock, on the dates of the gifts, is considerably less than what the respondent has determined. Decision will be entered under Rule 50. Footnotes
*. ( ) denotes net loss.↩